IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

DELGADO-RODRIGUEZ,

**Plaintiff**

v.

BCBG MAX AZRIA GROUP, INC.,

**Defendant.**

**CIVIL NO.** 12-1085 (JAG)

**OPINION & ORDER**

GARCIA-GREGORY, D.J.

This is an age discrimination and unlawful employment discharge claim originally brought in state court by Virginia Delgado-Rodriguez ("Delgado") and her daughter Tiffany Gomez-Delgado ("Plaintiffs") against BCBG Max Azria Group, Inc. ("Defendant" or "BCBG"). Plaintiffs seek redress under Puerto Rico Law Nos. 80 of May 30, 1976, as amended, ("Law 80") and 100 of October 30, 1959, as amended ("Law 100").

Defendant removed the action to this Court and quickly moved for summary judgment on the sole ground that it was not Plaintiffs' employer as defined by Laws 80 and 100. (Docket No. 6). Defendant thus argues that it cannot be held liable to Plaintiffs and that summary judgment should be granted in its favor. Plaintiffs opposed this motion, (Docket No. 13), and

Defendant replied (Docket No. 22). For the reasons stated below, the Court denies the motion for summary judgment.

## BACKGROUND

In February 2006, Max Rave LLC ("Max Rave") was incorporated in Delaware as a limited liability corporation. (See Defendant's Statement of Uncontested Facts, Docket No. 6-1, ¶ 2). Its only members were BCBG Max Azria Group, Inc. ("BCBG") and "BCBG's funding source." (Id.). On August 2006, BCBG purchased all of the membership interests in Max Rave LLC. (Id. at ¶ 5). Max Rave thus became a wholly-owned subsidiary of BCBG. (Id.).

On January 2006, G + G Retail, Inc. ("G+G") filed for Chapter 11 relief under the Bankruptcy Code. (Id. at ¶ 1). As part of that proceeding, G+G auctioned off its assets, including the "RAVE" stores it owned. (Id. at ¶ 2, 4). Max Rave was the winning bidder, and subsequently acquired G+G's assets through an Asset Purchase Agreement. (Id. at ¶ 5).

According to Defendant, Delgado was initially employed by G+G, and after the acquisition she became a Max Rave employee. (Docket No. 6-1, ¶ 11). It is uncontested that Max Rave paid Delgado, and issued her W-2 tax withholding statement for 2011. (Docket Nos. 6-1 at ¶ 9 and 6-6). That same year, all Max Rave

stores closed and all its employees were laid off. (See Docket
No. 6-5 at ¶ 9). Delgado's termination became effective on
January 27, 2011. (See Docket No. 13-1).

## STANDARD OF LAW

"Summary judgment is appropriate when there is no genuine
issue as to any material fact and the moving party is entitled
to judgment as a matter of law based on the pleadings,
depositions, answers to interrogatories, admissions on file, and
any affidavits." Thompson v. Coca-Cola Co., 522 F.3d 168, 175
(1st Cir. 2008) (citing Fed. R. Civ. P. 56(c)). The issue is
"genuine" if it can be resolved in favor of either party.
Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir.
2004). A fact is "material" if it has the potential to change
the outcome of the suit under governing law. Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for
summary judgment bears the burden of showing the absence of a
genuine issue of material fact. See Celotex Corp. v. Catrett,
477 U.S. 317, 323 (1986). "In prospecting for genuine issues of
material fact, we resolve all conflicts and draw all reasonable
inferences in the nonmovant's favor." Vineberg v. Bissonnette,
548 F.3d 50, 56 (1st Cir. 2008).

Although this perspective is favorable to the nonmovant,
once a properly supported motion has been presented before a

Civ. No. 12-1085                                                    4

Court, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant this Court's denial of the motion for summary judgment. <u>Anderson</u>, 477 U.S. at 248. The opposing party must demonstrate "through submissions of evidentiary quality, that a trial worthy issue persists." <u>Iverson v. City of Boston</u>, 452 F.3d 94, 98 (1st Cir. 2006) (internal citations omitted). Hence, summary judgment may be appropriate, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." <u>Forestier Fradera v. Municipality of Mayaguez</u>, 440 F.3d 17, 21 (1st Cir. 2006) (citing <u>Benoit v. Technical Mfg. Corp.</u>, 331 F.3d 166, 173 (1st Cir. 2003)).

## DISCUSSION

<u>Rule 11</u>

As a preliminary matter, the Court finds it necessary to remark on the distasteful tone taken by Plaintiffs' attorney, Carol Sosa-Santiago, in the opposition to BCBG's motions to remand and for summary judgment. For some inexplicable reason, Plaintiffs' motions are addressed against Defendant's counsel, Attorney Roberto Abesada-Aguet, rather than against his client BCBG. They also include a litany of personal attacks against him. Though the language used by Attorney Sosa suggests she holds some grudge against her opponent, Attorney Abesada assures

the Court that this is the first time they try a case against

each other. (<u>See</u> Docket No. 16, p. 3).

        Though the Court is mindful that attorneys must be zealous

in the prosecution of their clients' cases, they must remember

that they are ultimately officers of this Court, and are thus

bound by strict ethical standards.

> [C]ivility in litigation is a value that must be
> protected and this court will not tolerate rushing
> imputations of this nature. Members of the bar must
> treat each other, as well as parties and witnesses, in
> a civil, respectful, and courteous manner. This
> obligation applies not only in court, but also in all
> other written and oral communication. Disparaging
> personal remarks or acrimony towards other counsel,
> parties or witnesses serves no purpose.

<u>See</u> <u>Gierbolini Rosa v. Banco Popular De Puerto Rico</u>, 171 F.R.D.

16, 17 (D.P.R. 1997).

        The easiest way to avoid this problem is to refer to the

opposing party, rather than the opposing party's attorney, in

addressing the opponent's motions. Attorney Sosa would also do

well to tone down the florid language and, save for truly

extraordinary circumstances, the accusations of impropriety

levied against her opponents in the future. Failure to do so may

entail sanctions under Fed. R. Civ. P. 11. In pithier terms:

keep it civil.

Civ. No. 12-1085                                                                 6

Summary Judgment

Plaintiffs allege that BCBG terminated Delgado without just cause and on account of discrimination due to her age, in violation of Puerto Rico Laws 80 and 100. These laws, however, only provide a cause of action against the employer. See P.R. Laws Ann. t. 29 §§ 185(a) & 146. BCBG thus contends that this is a matter of mistaken identity: "Virginia Delgado did not work in BCBG stores, but in RAVE stores, which Max Rave LLC owned and operated since 2006 when it purchased in bankruptcy court the assets of G + G Retail, Inc." (See Docket No. 6 at p. 2). The Court finds, however, that triable issues of fact remain regarding whether BCBG was Delgado's employer.[1]

BCBG turns our attention to the "single entity" or "common control" test adopted from federal jurisprudence by the Supreme Court of Puerto Rico in cases dealing with Law 100 and the Puerto Rico Labor Relations Act. See Odriozola v. S. Cosmetic Dist. Corp., 116 D.P.R. 485, 496 (1985); see also J.R.T. v. Asoc. C. Playa Azul I, 117 D.P.R. 20, 28 (1986); Jeanneton v.

---

[1] The Court notes that the facts in this case are almost identical to those present in De La Rosa v. BCBG Max Azria Group, Inc., which is currently pending before Judge Dominguez. (See 12-1170 (DRD)). In that case, Magistrate Judge McGiverin issued a report and recommendation on BCBG's motion for summary judgment, recommending that summary judgment be denied on BCBG's "single employer" argument. The same is unopposed. Though that report remains pending, the Court finds the reasoning employed by the Magistrate Judge compelling, and the same guides our analysis here.

Civ. No. 12-1085                                                        7

Hilton Intern., 966 F.Supp. 133 (D.P.R. 1997); Alvarado Morales v. Digital Equipment Corp., 669 F. Supp. 1173 (D.P.R. 1987). Under this test, "a parent corporation and its subsidiary will only be regarded as one for purposes of finding the former liable if it is determined that (a) their operations are significantly interrelated; (b) there is common management; (c) there is joint control over labor relations; and (d) there is joint proprietorship or financial control." Jeanneton v. Hilton Intern., 966 F.Supp. at 136. In applying this test, the Court must focus on employment decisions, "but only to the extent that the parent exerts an amount of participation that is sufficient and necessary to the total employment process, even absent total control or ultimate authority over hiring decisions." See Romano v. U-Haul Int'l, 233 F.3d 655, 666 (1st Cir. 2000). Though no single prong is determinative, the "control of employment decisions is a primary consideration in evaluating employer status." Id.

Unfortunately, the record is too undeveloped at this juncture for this Court to grant summary judgment in favor of BCBG. To start with, there is little evidence regarding the interrelation of BCBG and Max Rave's operations or management, save perhaps for the fact that after Max Rave closed operations, some of its employees were offered similar positions in BCBG.

Civ. No. 12-1085                                                    8

(See Docket No. 6-5); cf. Cook v. Arrowsmith Shelburne, Inc., 69
F.3d 1235, 1241 (2nd Cir. 1995)(finding sufficient interrelation
where company A ran company B in a "direct and hands-on fashion,
establishing [its] operating [] and management practices").
Nothing on the record convincingly tilts this factor in favor of
either party; thus, a genuine issue of material fact remains.

    On the other hand, it stands uncontested that Max Rave is a
wholly-owned subsidiary of BCBG. See Cook, 69 F.3d at 1241
(denying summary judgment on four-part test partly because
company A was a "wholly-owned subsidiary" of company B). In an
attempt to put some distance between itself and Max Rave, BCBG
cites to declarations made by its assistant general counsel,
Erica Alterwitz, and its Puerto Rico Regional Manager, Jose
Rodriguez-Rodriguez. (Docket No. 6-2 and 6-5, respectively).
Both assert that "Max Rave LLC and BCBG are separate legal
entities," and that Delgado was never employed by BCBG. (See
Id.). Rodriguez-Rodriguez adds that "BCBG did not become a
successor employer of Max Rave LLC." (Docket No. 6-5 at ¶ 13).
But to be admissible at the summary judgment stage, these
statements must "concern facts as opposed to conclusions,
assumptions or surmise." Perez v. Volvo Car Corp., 247 F.3d 303,
316 (1st Cir. 2001). In any event, whether or not BCBG and Max
Rave are separate legal entities does not shed much light on the

four-prong test outlined above, as the "single employer" test already presumes the existence of two entities – the parent and the subsidiary.

The record also supports an inference, however tenuous, that BCBG exercised some control over Max Rave's labor relations. Like in De La Rosa, (see Footnote 1, supra), Delgado's dismissal letter from Max Rave was captioned: "Important Information About Your Separation From BCBG Max Azria Group, Inc." (Docket No. 13-1). The same letter instructed Delgado to contact BCBG's Corporate Human Resources Department if she required an employment verification. (Id.).

In De La Rosa, the magistrate judge noted that there was evidence indicating that BCBG employees were involved in Max Rave's personnel decisions. That evidence is lacking here. Nevertheless, the totality of the circumstances in this case still warrant the denial of summary judgment. Whether Plaintiffs' claims pass muster at trial remains to be seen. As noted above, the evidence must be sufficient for a jury to find that BCBG exerted "an amount of participation that is sufficient and necessary to the total employment process" at Max Rave for it to be considered Delgado's employer.

Civ. No. 12-1085                                                    10

### CONCLUSION

In short, the Court finds the record is not so clear so as to justify the grant of summary judgment in favor of BCBG on grounds that it was not Delgado's employer. In view of the foregoing, Defendant's Motion for Summary Judgment, (Docket No. 6), is hereby **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 27th day of March, 2012.

S/ Jay A. Garcia-Gregory
JAY A. GARCIA-GREGORY
United States District Judge